**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| FREDRICK MICHAEL BAER, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | 1:11-cv-1168-SEB-TAB |
| | ) | |
| BILL WILSON, Superintendent, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Discussing Petition for Writ of Habeas Corpus**

**I. Introduction**

This cause is before the Court on the petition of Fredrick Michael Baer ("Baer") for a writ of habeas corpus, on Respondent=s response to such petition, and on Baer's reply. The record has been appropriately expanded.

Whereupon, the Court, having read and considered said pleadings and having also considered the expanded record, finds that Baer's petition for a writ of habeas corpus must be DENIED.

**II. Background**

Mr. Baer was convicted of murdering Cory and Jenna Clark, and of robbery, theft and attempted rape, for which crimes the jury recommended the death penalty and the trial court sentenced Baer to death on June 9, 2005. Baer's conviction and sentence were affirmed on direct appeal in *Baer v. State*, 866 N.E.2d 752 (Ind. 2007)(*Baer I*). Baer's second amended petition for post-conviction relief was denied and the Indiana Supreme Court affirmed that denial in *Baer v. State*, 942 N.E.2d 80 (Ind. 2011)(*Baer II*). The facts and circumstances surrounding Baer's offenses were succinctly summarized in the ruling on his direct appeal, as follows:

At about nine o'clock in the morning of February 25, 2004, in a rural Madison County residential neighborhood near Lapel High School, Cory Clark, age twenty-four, stepped onto the porch of her home as the defendant drove by. He turned his vehicle around and drove back, stopped in her driveway, and got out. Later that day, she and her four-year-old daughter Jenna were found murdered in their home, Cory in a bedroom nude from the waist down, lying in a pool of blood, her throat lacerated, and Jenna in another bedroom with spinal injuries and a severely lacerated throat that nearly decapitated her. Cory's purse containing three to four hundred dollars was missing from the house. Later that morning, after changing his clothes, the defendant returned to work. The defendant admitted committing the murders. There is no evidence that Cory and Jenna Clark were anything other than total strangers to the defendant.

*Baer I*, 866 N.E.2d at 764-65.

Baer's claims in his direct appeal were the following: 1) the prosecutor improperly urged jurors to consider the effect that guilty but mentally ill ("GBMI") verdicts might have on a death sentence in relation to issues raised on appeal; 2) the trial court erred in admitting recorded telephone calls from the jail; 3) the trial court erred by failing to administer an oath to each panel of prospective jurors; and 4) prosecutorial misconduct and trial errors rendered the jury's recommendation of death unreliable.

On appeal from the denial of his post-conviction petition, Baer claimed that: 1) due to prosecutorial misconduct, he was denied a fair trial; 2) he was denied the effective assistance of counsel at trial; 3) he was denied the effective assistance of counsel on appeal; 4) the trial court's rejection of his guilty but mentally ill plea constituted structural error; 5) his severe mental illness reduced his culpability and precluded a death sentence; and 6) previously undiscovered evidence of his longstanding psychosis undermines confidence in and the reliability of his death sentence.

Baer's claims also include that his trial and appellate counsel in *Baer I* rendered ineffective assistance.

## III. Standard of Review

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). Our Court of Appeals has explicated the standard to be applied in ruling on a petition seeking relief under this statute:

> When a state court has ruled on the merits of a habeas claim, our review is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *Harrington v. Richter,* 131 S. Ct. 770, 783–84, 178 L.Ed.2d 624 (2011). Under AEDPA, we may grant relief only if the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Plainly stated, these are demanding standards.

*Atkins v. Zenk*, 667 F.3d 939, 943-44 (7th Cir. 2012); *See also Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

Review of Baer's habeas petition is governed by the AEDPA, as noted above. *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). The AEDPA "place[s] a new constraint" on the ability of a federal court to grant habeas corpus relief to a state prisoner "with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000).

The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau,* 538 U.S. 202, 206 (2003) (quoting *Williams,* 529 U.S. at 436). The requirements of AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings," *Uttecht v. Brown,* 555 U.S. 1, 10 (2007) (citations omitted) and reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error

correction through appeal." *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)).

Based on controlling case law precedent, the following guidelines apply to an AEDPA analysis:

! A state court=s decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams,* 529 U.S. at 404-08.

! AA state court decision is contrary to clearly established law if it applies a legal standard inconsistent with governing Supreme Court precedent or contradicts the Supreme Court's treatment of a materially identical set of facts. A state court unreasonably applies Supreme Court precedent if the state court identifies the correct legal rule but applies it in a way that is objectively unreasonable." *Bynum v. Lemmon,* 560 F.3d 678, 683 (7th Cir. 2009)(internal citations omitted).

! AClearly established federal law@ means Athe governing principle or principles set forth by the Supreme Court at the time the state court renders its decision.@ *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003).

! Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Williams,* 529 U.S. at 407; *see also Badelle v. Correll,* 452 F.3d 648, 653 (7th Cir. 2006). A[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.@ *Wood v. Allen,* 130 S. Ct. 841, 845 (2010). The Seventh Circuit Ahas defined >objectively unreasonable= as lying well outside the boundaries of permissible differences of opinion and will allow the state court's decision to stand if it is one of several equally plausible outcomes." *Burgess v. Watters,* 467 F.3d 676, 681 (7th Cir. 2006)(international citations and quotations omitted).

! AUnder AEDPA, federal courts do not independently analyze the petitioner=s claims; federal courts are limited to reviewing the relevant state court ruling on the claims.@ *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010).

! AThe habeas applicant has the burden of proof to show that the application of federal law was unreasonable.@ *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004)(citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

! With respect to § 2254(d)(2), state-court determinations of factual issues are "presumed correct" unless the petitioner can rebut the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Sprosty v. Buchler,* 79 F.3d 635, 643 (7th

Cir. 1996). To overcome the presumption, a habeas petitioner must proffer clear and convincing evidence to show that a factual determination is Λobjectively unreasonable in light of the evidence presented in the state-court proceeding.@ *Williams v. Beard,* 637 F.3d 195, 204 (3rd Cir. 2011)(footnote omitted) (citing *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)).

## IV. Ineffective Assistance of Trial Counsel

A defendant has the right under the Sixth Amendment to effective assistance of counsel at trial. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel under *Strickland,* the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Id.* For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense.

With respect to the first prong, Λ[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.@ *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688). With respect to the prejudice requirement, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *see also Bell v. Cone,* 535 U.S. 685, 697-98 (2002). It is not enough for a petitioner to show that "the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. A petitioner must specifically explain how the outcome at trial would have been different absent counsel's ineffective assistance. *Berkey v. United States,* 318 F.3d 768, 773 (7th Cir. 2003). In the context of a capital sentencing proceeding, the relevant inquiry is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. In making this determination, a

court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695.

When the AEDPA standard is applied to a *Strickland* claim, the following analytical calculus emerges:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at __, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788; *see also Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003). "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson,* 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

Baer advances multiple specifications of ineffective assistance of counsel during his trial and direct appeal: 1) trial counsel and appellate counsel failed to challenge the penalty phase jury instructions; 2) during *voir dire* trial counsel was ineffective by failing to explore with prospective jurors their ability to follow the law, and by impaneling jurors who would automatically vote for death and who were resistant to mitigation; 3) trial counsel failed to challenge the prosecutor's closing arguments on the basis of prosecutorial misconduct; 4) trial counsel failed to adequately prepare and present evidence supporting a sentence of less than death; and 5) appellate counsel failed in the selection and presentation of issues on direct appeal. We consider each claim in order below.

**A. Counsel's Failure to Challenge the Penalty Phase Jury Instructions.**

Baer claims that both his trial and appellate counsel failed to: (1) object to, or challenge on appeal, the omission of the words "or of intoxication" in a jury instruction identifying a statutory mitigating circumstance; (2) object to, or challenge on appeal, a jury instruction stating that only involuntary intoxication is a defense; (3) proffer an instruction to the jury that "life without parole" meant life without parole; and (4) object to instructions that referenced insanity.

*Omission of the words "or of intoxication."* Baer claims that his counsels' failure to object to, or challenge on appeal, the trial judge's omission of the words "or of intoxication" from jury instruction eleven on a statutory mitigating circumstance violated *Strickland* and *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). A mitigating factor under the Constitution is "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* As former Justice O'Connor noted: "Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, concurring).

The Indiana Supreme Court determined that Baer's tendered instruction containing the intoxication reference, "could have been rejected by the trial court because the evidence showed that Baer was not intoxicated" when he murdered Cory and Jenna Clark. *Baer II*, 942 N.E.2d at 97. Baer claims that appellate counsel's failure to raise the issue relating to this jury instruction as constituting fundamental error also violated *Strickland*. The Indiana Supreme Court ruled that, "[g]iven the link between ongoing methamphetamine usage and mental illness that repeatedly arose in expert testimony, the jury had an adequate opportunity to hear and act on this evidence

even with the omission of 'or of intoxication' from the jury instruction." *Id.* at 107 (citations to trial record omitted). Accordingly, trial counsel's omission did not constitute ineffective assistance, because the jury could have found mitigation based on the instruction as given, and appellate counsel's omission was not ineffective assistance as well for the same reason.

*Jury instruction stating that only involuntary intoxication is a defense.* Baer also contends that the jury was improperly instructed that voluntary intoxication was not a defense and that such instruction prevented jurors from considering intoxication as a mitigating factor. The Indiana Supreme Court rejected this argument, explaining:

> This instruction was a correct statement of the law and was relevant in determining whether Baer *committed his crimes intentionally.* As to mitigation, the court told jurors they could consider "[a]ny . . . circumstances" in mitigation and that "there are no limits on what factors an individual juror may find as mitigating." An objection to the instruction on voluntary intoxication as a defense to the crime would have been overruled at trial.

*Baer II,* 942 N.E.2d at 97 (citations omitted). The Indiana Supreme Court reviewed Baer's similar claim as to his appellate counsel and determined that "[l]ikewise, [attorney] Maynard's decision not to challenge the instruction that intoxication was not a defense to commission of any crime did not prejudice Baer's appeal because as we noted above it did nothing to muddy the waters by implying that intoxication could not be a mitigator." *Id.* at 107 (citations to trial transcript omitted). Baer fails in his petition before us to demonstrate that this determination was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 1519-22.

*Failure to proffer a proper instruction as to the meaning of "life without parole."* Baer next claims that trial counsel failed to tender an instruction properly apprising the jury that "life without parole" means life without parole or to challenge the trial court's failure to instruct the jury as to the meaning of "life without parole." As to the meaning of "life without parole," the Indiana Supreme Court held that the referenced phrase "consists of ordinary words that can easily

be understood by the average person." *Baer II*, 942 N.E.2d at 97. The Indiana Supreme Court also explained that Baer's appellate counsel's "decision not to challenge the court's failure to instruct that 'life without parole' really meant life without parole must be viewed against the fact that sentencing statutes do in fact change over time. The most a trial court could have told the jury was that the present statutes do not permit parole, something the jury obviously already knew." *Id.*, at 107 (footnote omitted) (internal quotation marks added). We are unable to fault this holding by the Indiana Supreme Court as an unreasonable application of the *Strickland* standard to Baer's claims of ineffective assistance of counsel. This claim thus falls short of establishing an entitlement to habeas corpus relief. *Murrell v. Frank,* 332 F.3d 1102, 1111 (7th Cir. 2003) (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

 *Failure to object to "insanity" reference.* Baer further claims that his trial counsel rendered ineffective assistance by not objecting to penalty phase instruction number 22, which included the term, "insanity." The instruction stated that "the jury has the right to accept or reject any or all of the testimony of witnesses, whether expert or lay witnesses on the questions of insanity or mental illness." (Direct Appeal Appendix of Appellant at 1336). The Indiana Supreme Court ruled on this claim as follows: "We think it unlikely that most counsel would have worried much about this mention of insanity. The court properly instructed the jury on issues of GBMI and insanity. Baer's trial counsel told the jury repeatedly that they were not arguing that Baer was insane. The jury would not have inferred that Baer was claiming he was legally insane." *Baer II*, 942 N.E.2d at 97. The Indiana Supreme Court in our view reasonably concluded that trial counsel did not render ineffective assistance by failing to object to penalty phase instruction number 22, thus removing a basis for habeas relief.

**B. Counsel's Ineffectiveness During Voir Dire**

*Impaneling jurors who would automatically vote for death and failing to explore their ability to follow the law*. In *Witherspoon v. Illinois,* 391 U.S. 510, 522 (1968), the Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." The Supreme Court later clarified that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment" is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt,* 469 U.S. 412, 424 (1985). In *Patton v. Yount,* 467 U.S. 1025, 1036 (1984), the Court held that the impartiality of a juror is a question of fact.

The Sixth Amendment requires that a state provide an impartial jury in all criminal prosecutions. "[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois,* 504 U.S. 719, 727 (1992). If "even one [partial] juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence." *Id.* at 729. The Court in *Witt* noted:

> This standard likewise does not require that a juror's bias be proved with "unmistakable clarity." This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and

> impartially apply the law . . . . [t]his is why deference must be paid to the trial judge who sees and hears the juror.

*Witt*, 469 U.S. at 424-426. The standard of review under the habeas statute posits that "the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *Id.* at 434.

The Indiana Supreme Court considered the death penalty *voir dire* issues in *Baer II*. A decision contrary to the holdings in *Witherspoon* or *Morgan* did not result from the Court's analysis. Thus, we address next the Âunreasonable application® prong of ' 2254(d)(1). The Indiana Supreme Court held as follows:

> During *voir dire,* juror Brown indicated that he would consider mitigating circumstances. (Trial Tr. at 769.) When Lockwood asked, "I want to have a chance with you for a vote of life. Do I have that chance with you," Brown responded "[y]es." (Trial Tr. at 790.) Juror Criss generally disfavored the death penalty but felt that it could be appropriate in some cases. (Trial Tr. at 658–59.) Further questioning revealed that juror Criss would base her decision on all the evidence. (Trial Tr. at 659–60.) Juror Lewis stated that he would decide the case based on the evidence. (Trial Tr. at 386.) Not even the most tortured reading of the transcript suggests that juror Lewis was an automatic death penalty juror.

*Baer II*, 942 N.E.2d at 94. The trial court's factual determinations are entitled to a presumption of correctness (28 U.S.C. § 2254(e)(1)) and it is clear that Baer has failed to rebut that presumption by clear and convincing evidence.

In finding no error, the Indiana Supreme Court also reasonably concluded that Baer's trial counsel had not rendered deficient performance. Baer's argument that the State Court's decision was based on an unreasonable determination of the facts in light of the evidence under § 2254(d)(2) also fails, given that the evidence considered by the Indiana Supreme Court included the extensive questioning of the jurors as to their views on the death penalty and whether they would make their decisions based on the evidence. Regarding counsel's failure to explore with prospective jurors their ability to follow the law, the Indiana Supreme Court further noted that "Baer does not direct

us to any particular place in the record where more questioning was required, and the record is full of defense counsel's thorough questioning on the potential jurors' ability to follow the law." *Id.* Baer has thus been unable to establish by clear and convincing evidence that the Indiana Supreme Court made an unreasonable determination of the facts in reaching its conclusion.

*Impaneling jurors who were resistant to mitigation.* In a similar vein, Baer also claims that trial counsel rendered ineffective assistance by allowing jurors resistant to mitigation to be impaneled. The Indiana Supreme Court reviewed this claim and held that:

> Counsel's discussion with Criss, Hartman, Zurcher, and Huett refutes the notion that they were mitigation resistant. (Trial Tr. at 660, 752–57, 784, 786–90, 919–21, 938–40, 973, 978, 980–81.) The juror questionnaires present multiple messages about the jurors' feelings on mitigation. Jurors Hartman, Huett, and Zurcher all checked a box stating: "Both a person's background and the nature and details of a particular crime should be considered in deciding appropriate punishment." Jurors Huett, Criss, and Hartman all checked a box on their questionnaires stating: "I would seriously weigh and consider the aggravating and mitigating factors in order to determine the appropriate penalty in this case." Those statements suggest that these jurors were open to mitigation. The jurors' answers during *voir dire* do not demonstrate that counsel were deficient in not challenging them for cause.

> Baer asserts that his trial counsel had a complete "failure to discuss issues of mitigation with prospective jurors." (Appellant's Br. at 54.) The record, however, shows just the opposite. Baer's trial counsel believed that mental illness was the strongest mitigating factor in this case and, consequently, they discussed mental illness extensively during *voir dire.* We conclude that trial counsel adequately conducted jury selection.

*Baer II*, 942 N.E.2d at 94-95. A decision contrary to the holding in *Morgan* and *Strickland* did not occur here. In addressing the Aunreasonable application@ prong of ' 2254(d)(1), Baer=s position that certain potential jurors were mitigation resistant is clearly contradicted by the record, as the Supreme Court ruled. The specific answers to direct questions posed on the juror questionnaires combined with the unequivocal responses of these jurors during *voir dire* demonstrate that there was neither an unreasonable application of *Morgan* and *Strickland* nor an unreasonable determination of the facts in *Baer II*.

### C. Challenge to Prosecutorial Misconduct

In evaluating a claim of prosecutorial misconduct as a violation of the petitioner's due process right to a fair trial, the legal issue to be resolved is whether the prosecutor's conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)).

> In evaluating prosecutorial misconduct under governing Supreme Court law, it is not enough that the prosecutor's remarks were "undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." As we pointed out in *Howard v. Gramley,* 225 F.3d 784, 793 (7th Cir. 2000), *Darden* sets forth several factors to inform this inquiry: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." These factors, however, are not to be applied in a rigid manner, but should be used as a guide to determine whether there was fundamental unfairness that infected the bottom line. For that reason, we often have characterized the weight of the evidence as "the most important consideration."

*Hough v. Anderson,* 272 F.3d 878, 903 (7th Cir. 2001) (footnote and some internal citations omitted).

The specific comments by the prosecutor which Baer takes issue with that should have generated objections by his attorneys at trial and on direct appeal are the following: 1) the prosecutor's misrepresentation of the law regarding the insanity defense and a guilty but mentally ill verdict; 2) the prosecutor's false claim that no Indiana case authorizes the death penalty following a guilty but mentally ill verdict in light of *Harris v. State*, 499 N.E.2d 723 (Ind. 1986); 3) the prosecutor's false assertion that Baer refused to accept responsibility for his criminal acts; 4) the prosecutor's comments about the meaning of "life without parole"; 5) the prosecutor's comments during *voir dire* inquiring of prospective jurors' as to their willingness to vote for the

death penalty; 6) the prosecutor's remarks regarding the facts of the case that warranted a sentence of death; 7) the prosecutor's improper references to victim impact statements; 8) the prosecutor's disparagements during arguments of Baer and his legal defense team; 9) the prosecutor's remarks calling attention to Baer's courtroom demeanor; and 10) the prosecutor's improper arguments based on other Madison County murder convictions and sentences, the facts of which were, according to Baer, far worse than those in his case. We discuss each contention below.

*The insanity defense and a guilty but mentally ill verdict.* Baer claims that the prosecutor during his opening statement at trial erroneously equated a guilty but mentally ill verdict to insanity, to which error trial counsel failed to object. Specifically, Baer contends that the evidentiary standard for establishing guilty but mentally ill is less demanding than the standard for proving insanity. Insanity requires, in part, a finding that the accused is unable to appreciate the wrongfulness of his actions, yet jurors were told, by the prosecutor that this case was about whether Baer could convince the jury that he did not know right from wrong. The Indiana Supreme Court addressed Baer's impugning of his defense counsel's strategic decision not to object, as follows:

> It seems likely that defense counsel consciously chose not to object to the prosecutor's misstatements as part of their general strategy of letting the prosecutor discredit himself. (PCR Tr. at 32.) At PCR, Williams testified that he had known Prosecutor Cummings for years and knew he was capable of overstating his case to the jury. (PCR Tr. at 32.) Trial counsel planned to correctly state the law to the jury when it was their turn, have the judge echo their statement of the law through the jury instructions, and hope the jury would decide from the contrast that the prosecutor was not credible. (PCR Tr. at 32.)

> Consistent with this approach, defense counsel correctly stated the law in closing argument:

>> Let me repeat this for the hundredth time: We are not saying that Fredrick Michael Baer is insane. I said it to you in jury selection. Mr. Lockwood said it to you. I've said it to you repeatedly. . . . Mental disease or defect.

> (Trial Tr. at 2105.) And the court's instructions correctly stated the law and made it clear that they took precedence over arguments by counsel on what the law was.

> (Trial Tr. at 1126, 1130–31, 2122, 2580.) It was not deficient for [defense counsel] Maynard to take a pass on this potential claim.

*Baer II*, 942 N.E.2d at 99-100. Thus, the Indiana Supreme Court recognized that trial counsel's failure to object reflected what appeared to be a deliberate trial strategy, augmented by Baer's trial counsel's correct statement of the law regarding guilty but mentally ill in his closing argument. In addition, the court's instructions made clear that, where there were inconsistencies, the court's instructions trump counsel's arguments. The Indiana Supreme Court concluded on these grounds that it was not ineffective for appellate counsel to fail to raise this issue in *Baer I*. We cannot quarrel either with this analysis or these conclusions by the Supreme Court. There simply was no unreasonable application of *Strickland* principles by the High Court.

*Authorization of the death penalty after a guilty but mentally ill verdict*. Baer claims that the prosecutor's misstatement of law created confusion over whether the state was authorized to execute a person who was found to be guilty but mentally ill, thereby violating the holding in *Caldwell v. Mississippi*, 472 U.S. 320 (1985).

Baer faults the failures of both his trial and appellate counsel to challenge the prosecutor's misstatement of the law. In *Caldwell*, the U.S. Supreme Court ruled that "it is constitutionally impermissible for a death sentence to rest on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death lies elsewhere." *Id.* at 328-29. A *Caldwell* violation occurs where the jury is affirmatively misled regarding its role in the sentencing process so as to diminish its sense of responsibility. *Romano v. Oklahoma*, 512 U.S. 1, 8-9 (1994). A petitioner can establish a *Caldwell* violation only if he is able to show that "the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams,* 489 U.S. 401, 407 (1989); *see also Fleenor v. Anderson,* 171 F.3d 1096, 1099 (7th Cir. 1999).

On direct appeal, the Indiana Supreme Court explicated its reasoning on this issue, as follows:

> [T]he perceived uncertain potential appellate affect of a verdict of guilty but mentally ill was first presented to prospective jurors in this case by the defense, not the State. With the acknowledged objective of seeking a verdict of guilty but mentally ill, the defense during voir dire sought to condition the jury to believe that there was no appreciable difference between that and a verdict of guilty, all the while hopefully anticipating that a significant difference may result on appeal. When challenged by the prosecutor at a bench conference for misleading the jury, the defense elected candidly to disclose its strategy to the jurors and explained its belief regarding the possible appellate affect of a verdict of guilty but mentally ill. The defendant cannot be heard on appeal to complain that the prosecutor committed misconduct by responding and presenting argument in order to resist the defense's strategy of gaining appellate advantage.

*Baer I*, 866 N.E.2d at 760-61 (footnote omitted). Baer again raised the issue relating to the prosecutor's misstatement of the law in the context of an ineffective assistance of counsel claim. In response, the Indiana Supreme Court again ruled:

> Baer's appellate ineffective assistance of counsel claim has much in common with his direct appeal claim about the prosecutor's statements and allegations about trial counsel on the same point. Prosecutors and defense counsel alike would have read our opinion in *Prowell v. State,* 741 N.E.2d 704, 717 (Ind. 2001), in which we observed that defendants formally found GBMI "normally receive a term of years or life imprisonment." We observed that many shared the view that death was inappropriate for a GBMI defendant. *Id.* at 718. We set aside Prowell's sentence partly on this basis.

> These judicial declarations explained why Baer's lawyers, from trial through PCR, have labored to obtain a GBMI conviction, and why the prosecutors have pushed back at each turn. It adequately explains why Maynard did no damage in not complaining about the prosecutor's statement to the jury.

> On another front, the prosecutor also discussed during *voir dire* the possibility that the legislature might one day change the law on life without parole and allow Baer to receive parole. (Trial Tr. at 920–21.) The prosecutor nevertheless correctly stated the current law on life without parole, as did trial counsel. (Trial Tr. at 428, 601, 920.) We rejected this claim on direct appeal because defense counsel initiated the discussion, so it was not improper for the prosecutor to respond. *Baer,* 866 N.E.2d at 760–61.

*Baer II,* 942 N.E.2d at 100 (footnote omitted). The prosecutor's comments to the jury did not diminish the jurors= role or responsibility in determining Baer's sentence. Here, the jurors were correctly apprised of the law relating to life without parole by both the prosecutor and defense trial counsel, thereby justifying appellate counsel's decision not to raise these issues on appeal. The Indiana Supreme Court=s determination was not contrary to, nor was it an unreasonable application of, established federal law as determined by the Supreme Court. Once again, the record reflects that the Indiana Supreme Court "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). There is no legal basis on which to set aside that decision in this habeas proceeding.

  *Baer's refusal to accept responsibility.* Baer claims that the prosecutor told the jury that the reason for a trial was because Baer did not want to accept responsibility for his actions. The effect of this statement was to place Baer in a negative light and reduce his standing before the jury, which defense counsel failed to ameliorate or correct by interposing an objection to the prosecutor's remark. The Indiana Supreme Court addressed the prosecutor's statement in the following manner:

> This statement did not deprive Baer of a fair trial. Baer's counsel repeatedly told the jury that Baer committed these crimes and was not disputing his innocence [sic]. The jury knew that Baer was not attempting to say that he was innocent. The prosecutor was seeking a guilty verdict and saw Baer's attempt to plead GBMI as an attempt to avoid full responsibility for his crimes. Baer's counsel acknowledged that Baer wanted a GBMI verdict because they thought it was Baer's best chance at avoiding the death penalty. This was part of the rhetorical struggle sensibly waged by both sides.

*Baer II*, 942 N.E.2d at 101. Clearly, the Indiana Supreme Court gave thoughtful consideration to this issue and determined that counsel=s performance was not legally defective or deficient. This conclusion, combined with the directive from the U.S. Supreme Court that "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland,* 466 U.S. at 689, makes clear that

Baer's ineffective assistance of counsel argument based on the prosecution's statements regarding Baer's willingness to accept responsibility is a non-starter, because it is "at least minimally consistent with the facts and circumstances of the case or is one of several equally plausible outcomes." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). Baer has thus shown no entitlement to habeas relief based on this claim.

*The meaning of "life without parole."* Baer asserts again that the prosecutor's statements to the jury as to the meaning of "life without parole" misled the jury when he speculated that the legislature may someday change the law to establish the option of life with parole. The fact that neither his trial nor appellate counsel challenged this remark, he says, exacerbated the level of prejudice he experienced. He continues by arguing that the state court "incorrectly stated that it had rejected this claim on direct review." The Indiana Supreme Court, in fact, did not address this as a prosecutorial misconduct claim in *Baer I*, only in *Baer II* where it explained that "[t]he prosecutor nevertheless correctly stated the current law on life without parole, as did trial counsel." *Baer II*, 942 N.E.2d at 98. We find no grounds for habeas relief based on these holdings or factual circumstances.

*Comments during voir dire respecting prospective jurors' ability to vote for the death penalty.* Baer includes among his numerous and varied claims of prosecutorial misconduct that went unchallenged by his counsel the allegedly inappropriate comments made by the prosecutor during *voir dire* regarding prospective jurors' ability to vote for the death penalty. The Indiana Supreme Court addressed this issue, as follows:

> Baer says his appellate lawyer should have cited as grounds for reversal the prosecutor's repeated inquiries to jurors whether they had the strength of character and the courage to impose the death penalty if they thought it was the appropriate sentence. He further asked them if they had the courage of their convictions to stand by that sentence if the trial court polled them after sentencing. Defense counsel's strategy was a mirror image: they attempted to draw out the prospective jurors who

were predisposed to vote for the death penalty in order to strike them from the jury pool. The prosecutor's questions merely allowed him the similar opportunity to strike jurors who would not vote for the death penalty even if they thought it was warranted. Trial and appellate counsel both performed reasonably on this point.

*Baer II*, 942 N.E.2d at 101. The Indiana Supreme Court's analysis and resolution of the *voir dire* issues was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Again, we find no grounds for habeas relief in this context.

*Comments regarding the facts of the case warranting a death sentence.* Baer's next contention is that the prosecutor's argument to the jury that the facts required the death penalty violated the Eighth Amendment guarantee of individualized and reliable sentencing, which argument again went unchallenged both by his trial and appellate counsel. The Indiana Supreme Court addressed contention in its review:

> Baer also says Maynard should have appealed by citing the fact that the prosecutor told the jurors the facts of the crime and then told the jury that these facts warranted death. (Appellants Br. at 24.) Here, too, the defense and the prosecution both found elaborating on the facts useful in the struggle over whether the sentence should be death. Baer's counsel told the jury, "I'm telling you right now up front, he committed these crimes. He cut the throat of a mother. He cut the throat of her four-year-old daughter." (Trial. Tr. at 641.) When the trial judge questioned the extensive recitation of facts occurring during *voir dire,* Baer's counsel told the court that he wanted the jury to know the facts as part of a technique called "stripping."[6] (Trial Tr. at 875.) Baer's appellate counsel could not be ineffective for not raising this argument on direct appeal because trial counsel made a reasonable professional judgment to allow the jury to hear the facts of the case during *voir dire.*

*Baer II*, 942 N.E.2d at 101. The Indiana Supreme Court further explained:

> According to the testimony on PCR, "stripping" involves asking jurors their opinion about a hypothetical murder of a completely innocent person with no defenses. (PCR Tr. at 617–19.) The idea seems to be that those jurors who say only death is suitable for the hypothetical defendant would be struck for cause. (PCR Tr. at 617–19.) Baer's counsel apparently decided to use this technique, but used the facts of Baer's actual crimes rather than a hypothetical. (*See* Trial Tr. at 875–76.) Baer's trial counsel stated, "I'm happy to go on the record as saying that Mr. Williams and I have thought this case through and our approach through. It is the

> exercise of our independent professional judgment to take this tactic and that we
> have consulted with our client thoroughly about this." (Trial Tr. at 886.)
> Uncommon as such declarations are in capital cases, they seem based in fact.

*Baer II*, 942 N.E.2d at 101, n. 6. "[C]apital punishment [must] be imposed fairly, and with reasonable consistency, or not at all." *Eddings v. Oklahoma,* 455 U.S. 104, 112. The decision of Baer's trial counsel not to challenge these prosecutorial assertions and his appellate counsel's decision not to raise an appeal issue on this basis were not legally, factually or professionally deficient, given that both parties included an explanation of these specific facts in addressing a potential death sentence. *See Galowski v. Murphy,* 891 F.2d 629, 635 (7th Cir. 1989) (AJudicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction. . . . Because of the difficulties inherent in the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.@), *cert. denied,* 495 U.S. 921 (1990). After a careful review of these issues, the Indiana Supreme Court again concluded that neither trial nor appellate counsels' performance was deficient. We have identified no basis on which to conclude otherwise.

Even if the decision by Baer's counsel not to challenge the prosecutor's statements and appellate counsel's decision not to raise this claim on appeal were deemed constitutionally deficient, their failures to do so did not redound to prejudice Baer's legal interests. These statements did not result in a trial that produced a fundamentally unfair and unreliable result. Because counsels' failures to object did not prejudice Baer, Baer cannot prevail on this ineffective assistance of counsel claim.

*Improper inclusion of victim impact statements.* Baer claims that the prosecutor improperly referenced before the jury the victim impact statements and that, when those statements were made, his trial counsel failed to object. The use of victim impact evidence as such does not violate the Eighth Amendment. *See Payne v. Tennessee,* 501 U.S. 808, 827 (1991).[1] "The *Payne* Court recognized that only where such evidence or argument is unfairly prejudicial may a court prevent its use through the Due Process Clause of the Fourteenth Amendment." *Castillo v. Johnson,* 141 F.3d 218, 224 (5th Cir.), *cert. denied,* 524 U.S. 979 (1998). The Indiana Supreme Court explained:

> As for the prosecutor's declaration that the facts warranted death, the prosecutor told the jury during *voir dire* that the State was seeking justice for the family because they would be without a mother and a child. (Trial Tr. at 378, 405, 480.) During the penalty phase, he told the jury it should sentence Baer to death because that was what the family wanted. (Trial Tr. at 2551.) Inappropriate though these comments may have been, we do not think they rendered Baer's trial fundamentally unfair. The trial court ruled that the prosecutor's statements at *voir dire* did not constitute victim impact evidence but told the prosecutor not to get that close to the line again. (Trial Tr. at 803–04.) The prosecutor then told the jury he misspoke. This is the sort of rebuke to the prosecutor that defense counsel likely found helpful.

*Baer II*, 942 N.E.2d at 101-102. As to the statements made during *voir dire*, the record reflects that the attorneys addressed with the trial judge the statements made by the prosecutor, but that none of the jurors who were in the jury box when the statements were made were ultimately selected to serve as members of the jury panel, although the ones who were selected had been in the courtroom at the time and would likely have heard the prosecutor's statements. In any event, the trial judge opined that the comments made during *voir dire* were not, in fact, victim impact statements. (TR 864-867). The Indiana Supreme Court did not find that the prosecutor's comments referencing the

---

[1] In *Payne,* the Supreme Court overruled its prior decisions in *Booth v. Maryland,* 482 U.S. 496 (1987), and *South Carolina v. Gathers,* 490 U.S. 805, concerning the admissibility of victim impact evidence in a death penalty proceeding.

victim's family "inflame[d] the jury's passions more than did the facts of the crime," *Payne,* 501 U.S. at 832 (concurring opinion of Justice O'Connor).

"The well-settled standard of review [is] that we are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole, to determine if such conduct was `so inflammatory and prejudicial to the defendant . . . as to deprive him of a fair trial.'" *United States v. Chaimson,* 760 F.2d 798, 809 (7th Cir. 1985) (quoting *United States v. Zylstra,* 713 F.2d 1332, 1339 (7th Cir.), *cert. denied,* 464 U.S. 965, 344 (1983)). In making this "fundamental fairness" determination, we must "consider[ ] the pertinent surrounding circumstances at trial," *Mahorney v. Wallman,* 917 F.2d 469, 473 (10th Cir. 1990), including the strength of the state's case relating to the petitioner's guilt, *Coleman v. Brown,* 802 F.2d 1227, 1237 (10th Cir. 1986), *cert. denied,* 482 U.S. 909 (1987), and the prejudice, if any, attributable to the prosecutor's comments, *Mahorney,* 917 F.2d at 472-73. If, however, the impropriety complained of "'effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.'" *Yarrington v. Davies,* 992 F.2d 1077, 1079 (10th Cir. 1993) (*quoting Mahorney,* 917 F.2d at 472).

Regarding the statements made during the penalty phase of Baer's trial, there may have been strategic reasons for counsel not to object during the prosecutor's rebuttal, for example, counsel may not have wanted to draw attention to the improper statements as the judge had already addressed the issue with both the prosecutor and the jury. The comments were made in response to arguments made by Baer's attorneys regarding a death sentence and the Clark family. As detailed above, the Indiana Supreme Court determined that these statements during the penalty phase did not render Baer's trial fundamentally unfair. *Baer II*, 942 N.E.2d at 102. We cannot fault the Indiana Supreme Court's conclusions on this issue, either as to the comments made during *voir*

*dire* or during the penalty phase; they simply do not satisfy the AEDPA standard set out in § 2254(d).

      *Disparagement, comments on courtroom demeanor and statements about other Madison County murder convictions and sentences.* Baer's final set of claims faulting the prosecutor are three: 1) he personally disparaged Baer, his defense team and experts; 2) he commented on Baer's courtroom demeanor; and 3) he referenced other, more egregious Madison County murder convictions. As to each of these, defense counsel failed to object. The Indiana Supreme Court reviewed each of these claims at length, explaining:

> Many of the comments directed at Baer and his experts were fair comments on the evidence. The comments directed at Baer's attorney, when read in full, are hardly misconduct.
>
> To take a few examples, the prosecutor commented in his closing argument on Baer's demeanor: "You've got a better look at him then I do because I am over here, but he seems to be joking around and talking to people in the audience all the time." (Trial Tr. at 2061.) During the penalty phase, the prosecutor quoted trial counsel's opening statement at trial and asked the jury to consider whether Baer's crimes were among "the worst of the worst." (Trial Tr. at 2513.) Based on his experience, he thought that they were. (Trial Tr. at 2513.) He conceded that jurors might think the September 11 terrorist attacks or the Oklahoma City bombing were worse but asked that they consider the actual facts of Baer's murders. (Trial Tr. at 2514.) The prosecutor then recounted the facts of the murders in graphic detail. (Trial Tr. at 2514.)[8] During rebuttal, the prosecutor referenced the hardships he himself faced while growing up and the time he spent in jail to argue that Baer was using his own childhood as an excuse that should save him from the death penalty. (Trial Tr. at 2548–50.) He also briefly mentioned the cost while telling the jury that the State was not seeking the death penalty haphazardly. (Trial Tr. at 2551.) Each of these arguments was a response to arguments made by defense counsel. (Trial Tr. at 2540–41, 2525–30.)
>
> Baer asserts that these various statements violated his Fifth, Sixth, and Fourteenth Amendment rights. To the extent that any comments directed at Baer, his counsel, or his experts were misconduct, any impact on the fairness of Baer's trial was minimal. Even if taken in the aggregate, these comments did not affect the outcome of Baer's trial.
>
> Moreover, a prosecutor may respond to the allegations and inferences trial counsel makes even if the way he responds would otherwise be objectionable. *Cooper v.*

*State,* 854 N.E.2d 831, 836 (Ind.2006). Baer's trial counsel first brought up the financial burden of execution. (Trial Tr. at 427, 2540–41.) Both of Baer's trial counsel talked about their own families and upbringings as a contrast to Baer's family and upbringing. (Trial Tr. at 2527, 2532, 2544–45.) Then his counsel argued that Baer committed his crimes because society failed him. (Trial. Tr. at 2532.) The prosecutor's comments about his own rough upbringing was a fair rebuttal to these points made by Baer's counsel.

*Baer II*, 942 N.E.2d at 102. The Indiana Supreme Court also noted:

Contrary to Baer's argument, the prosecutor did not directly compare Baer to the perpetrators of the September 11 terrorist attacks or the Oklahoma City bombing. (Trial Tr. at 2513.) He was arguing that even though other crimes were worse, that should not preclude the jury from imposing the death penalty in Baer's case. (Trial Tr. at 2513.) Defense counsel also had a chance to respond to this perceived impropriety, which was their avowed strategy throughout the trial. (Trial Tr. at 2525–47; PCR Tr. at 32.)

*Id.* at n.8. It is not enough for a petitioner to show that "the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. A petitioner must specifically explain how the outcome at trial would have been different absent counsel's ineffective assistance. *Berkey v. United States,* 318 F.3d 768, 773 (7th Cir. 2003). Here, the Indiana Supreme Court thoroughly reviewed these claims through *Strickland*'s lens. Accordingly, Baer is not entitled to habeas relief pursuant to the Aunreasonable application@ prong of ' 2254(d)(1).

In summary, we conclude based on the evidence and the context of each of the identified comments as thoroughly and properly considered by the state court(s), along with their determination(s) that none of those identified comments by the prosecutor deprived Baer of a fair trial were in all respects well founded in law and fact. As in *Hough v. Anderson*, 272 F.3d 878, 904 (7th Cir. 2001), the Indiana Supreme Court focused in Baer's case on the evidence and the possibility of prejudice to the defense, ruling that Athe prosecutor did not misstate the evidence, nor was a specific right, such as the right to remain silent, implicated.@ *Hough,* 272 F.3d at 903. Moreover, in some instances, the prosecutor=s comments were directly responsive to arguments

made by Baer=s attorneys. The challenged comments were brief and measured, such that, when viewed in light of the overwhelming weight of the evidence against Baer,[2] and that "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland,* 466 U.S. at 689, the state court's determinations of Baer=s ineffective assistance of counsel argument in *Baer II* must stand. Those decisions by the Indiana Supreme Court were "at least minimally consistent with the facts and circumstances of the case [and] is one of several equally plausible outcomes.@ *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). Accordingly, Baer is not entitled to habeas relief based on his claim that his attorneys were ineffective for not objecting to certain remarks by the prosecutor or for failing to raise such claims on appeal.[3]

### D. Presentation of Evidence Supporting a Sentence Less Than Death.

Baer claims that his trial counsel was ineffective in the preparation and presentation of evidence in support of a sentence of less than death, by failing to: 1) seek a continuance; 2) properly investigate and present evidence in both the guilt and penalty phase; 3) properly counseling Baer to plead Baer guilty but mentally ill due to counsel's ignorance of the applicable law and his failure to adduce evidence in support of plea; 4) properly present guilt phase evidence; 5) adequately cross-examine the toxicologist; 6) object to the use of Dr. Masbaum's report; 7) investigate and present mitigating evidence; 8) properly instruct the jury; and 9) provide effective assistance to a degree and extent to generate the cumulative effect of ineffective assistance.

2 S*ee Swofford v. Dobucki*, 137 F.3d 442, 445 (7th Cir. 1996) ("While the prosecutor's comments might have been improper, we do not believe that they tainted Swofford's trial with unfairness in light of the weight of evidence against him.").

3 Although Baer contends, in part, that the Indiana Supreme Court=s decision was incomplete because it did not include an analysis as to the cumulative effect of all the unobjected to prosecutorial misconduct to find prejudice under *Strickland*, that argument does not warrant a different disposition. Each of the individual claims was rejected. These claims, in the aggregate, do not change the analysis or compel a different conclusion. As explained by the Seventh Circuit in *Alvarez v. Boyd,* 225 F.3d 820, 825 (7th Cir. 2000), AIf there was no error, or just a single error, there are no ill effects to accumulate and so a petitioner in such a case could not prevail on this theory [of cumulative error]." Baer has failed to demonstrate error of constitutional dimension in his habeas petition, negating any cumulative effect from the alleged errors he has cited.

Deficient performance is "measured against an objective standard of reasonableness, under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (citations omitted). In making this determination, the court considers "the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct . . . ." *United States v. Lindsey,* 157 F.3d 532, 535 (7th Cir. 1998); *see also Hough v. Anderson,* 272 F.3d 878, 891 (7th Cir. 2001) (holding that the court must consider the totality of the evidence known to the judge). There is a strong presumption that "any decisions by counsel fall within a wide range of reasonable trial strategies." *Lindsey,* 157 F.3d at 535. "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987)). "There are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689. There comes a point where a defense attorney will reasonably decide that another strategy is in order, thus "mak[ing] particular investigations unnecessary." *Id.* at 691.

*Continuance of Trial.* Baer claims that trial counsel failed to seek a continuance of the trial or to interview Dr. Evans about a report that was provided to counsel twelve days before trial. In determining that it was not deficient performance for counsel to fail to seek a continuance, the Indiana Supreme Court explained:

> Lead counsel Jeffrey Lockwood began representing Baer just four months before jury selection. (Direct Appeal App. at 1155.) Baer believes lead counsel should have requested a continuance because Lockwood did not have ample time to develop and litigate a respectable trial strategy, pointing to the fact that former lead counsel Douglas Long was not certain he would be ready for the trial in April 2005 because Long felt as though he was working on the case alone. Baer contends that the mitigation specialist was overwhelmed with the records in the case and further explains that more time "may have avoided the problems during Dr. Davis's

testimony where he could not locate a particular record during cross-examination and appeared disorganized." (Appellant's Br. at 53.)

Neither of Baer's trial lawyers believed they needed a continuance. (Appellant's Br. at 52.) Baer acknowledges that his second attorney, Bryan Williams, who had been his counsel from the beginning, had extensive trial experience. (Appellant's Br. at 51.) Both lawyers, of course, met the requirements of *Ind. Criminal Rule 24(B)*, and Lockwood had a great deal of experience in capital trials. (PCR Tr. at 20, 51–52.)

*Baer II*, 942 N.E.2d at 93-94. This assessment of counsels' readiness for trial accurately reflects the factual circumstances before the trial commenced and thus, was not objectively unreasonable.

*Investigate and present evidence in both guilt and penalty phase.* Baer also claims that his trial counsel failed to investigate his mental health and background, which resulted in an incomplete presentation of evidence in support of a GBMI verdict and of mitigation, that trial counsel failed to obtain a comprehensive and independent assessment of Baer's mental health, and that the Indiana Supreme Court's assumption that trial counsel's presentation was adequate without making an assessment of whether counsel "actually demonstrated reasonable profession judgment" was an unreasonable application of *Strickland*. Our review causes us to conclude that the Supreme Court correctly applied the ineffective-assistance standards regarding counsel's investigation into and presentation of evidence during the mitigation stage of death-penalty cases. *See Cullen v. Pinholster,* 131 S. Ct. 1388 (2011); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith,* 539 U.S. 510 (2003); *Williams v. Taylor,* 529 U.S. 362 (2000). The Indiana Supreme Court explained:

[A]ll three mental health experts who testified at the guilt phase discussed Baer's auditory hallucinations and all three experts explicitly stated that Baer was mentally ill. (Trial Tr. at 1779–80, 1785–86, 1869–74, 1886–87, 1894, 1909, 1926, 1929–30, 1945, 1947–53, 1973–74, 1978–79, 1992–93.) The lack of testimony by two lay witnesses who could corroborate the facts used by the experts does not establish ineffective performance.

*Baer II*, 942 N.E.2d at 95. The Indiana Supreme Court continued:

Trial counsel Bryan Williams explained the defense team's decision:

> We had Dr. Cunningham who had spent a substantial amount of time putting together the entire family history, how certain folks were related, incidents, and we thought at the time that he was probably in as good a position as anybody to explain the entire family history, and we thought he was a very good witness so we decided to use him exclusively.

(PCR Tr. at 33.) Lead trial counsel Jeffrey Lockwood confirmed this assessment when he testified at the post-conviction hearing:

> I did not feel that we could rely on any of the family members under all circumstances to be helpful to us. And beyond that, there weren't many other people. And so what we did was we tried to incorporate in Dr. Cunningham's examination all of the things that he uncovered about social history. I mean we did think about [calling other witnesses], but we had ample reason in my opinion to believe that we would not gain ground by calling family members.

(PCR Tr. at 73–74.) Our review of the PCR transcripts leads us to the conclusion that there were reasons that an experienced attorney might hesitate to call Baer's family members; it was professionally reasonable not to call additional witnesses.

This case is hardly a case where no mitigating evidence was assembled. Trial counsel hired a mitigation consultant, and because of her efforts, counsel knew a great deal about the defendant's background, upbringing, and prior mental health problems. (PCR Tr. at 26, 56–57, 61–62, 71.) Dr. Cunningham conducted interviews with many of Baer's family members and reviewed Baer's records (including school and mental health records) and notes from interviews with many people from Baer's past. (Trial. Tr. at 2253–54, 2264–65.) He testified about many potential mitigators including previous mental health disorders, diagnoses, and institutionalizations (Trial Tr. at 2266, 2311, 2313–24, 2374–82, 2387, 2400–03), Baer's extremely troubled family situation (Trial Tr. at 2284, 2288–93, 2337–45, 2347–72, 2409–2410), Baer's extensive history of substance abuse (Trial Tr. at 2284, 2328–32, 2390–93, 2403–05), and Baer's history of neurological problems (Trial Tr. at 2306–11, 2325–28, 2332–36). We find that Dr. Cunningham's testimony presented an abundance of potential mitigating factors to the jury.

As in *Woods v. State,* 701 N.E.2d 1208, 1226 (1998), Baer's argument is essentially that counsel should have done more. In all post-conviction proceedings, the petitioner will always be able to find some information from his past that was not presented to the jury. Dr. Cunningham's testimony included almost all of the potential mitigators that Baer asserts should have been better presented to the jury. We do not believe the result of Baer's trial would have been different had the witnesses who testified at the PCR hearing been called at trial.

*Baer II*, 942 N.E.2d at 98. In evaluating a claim of ineffective assistance, we defer to "any strategic decision the lawyer made that falls within the 'wide range of reasonable professional assistance,' even if that strategy was ultimately unsuccessful." *Shaw v. Wilson,* 721 F.3d 908, 914 (7th Cir. 2013) (quoting *Strickland,* 466 U.S. at 689) *cert. denied*, 134 S.Ct. 2818. This is not a case in which inadequate investigation or inattention in discovering or assessing possible mitigating evidence including Baer's mental health issues has been criticized by the state courts. *See Charles v. Stephens*, 736 F.3d 380, 389-90 (5th Cir. 2013). Nothing about counsels' performance reflected inadequate preparation or a lack of attention to available arguments at the guilt and penalty phases of Baer's trial. *See Mertz v. Williams*, 2014 WL 643661, *6 (7th Cir. Nov. 18, 2014). ("The mere fact that additional documents would have corroborated Mertz's testimony does not support a conclusion that his sentencing counsel performed deficiently by not introducing them.")

Baer's ineffective assistance claims distill to a single contention that his counsel did not present *enough* mitigating evidence. "[S]uch arguments come down to a matter of degrees, which are ill-suited to judicial second-guessing." *Woods v. McBride*, 430 F.3d 813, 826 (7th Cir. 2005) (citing *Conner v. McBride*, 375 F.3d 643, 666 (7th Cir. 2004)). We hold that the Indiana Supreme Court's rejection of these criticisms was a reasonable application of *Strickland* to the facts of this case.

*Failing to plead Baer guilty but mentally ill.* Baer claims that because his trial counsel did not know the law regarding a guilty but mentally ill plea, he was not counseled effectively as to that possible option, which failure amounted to ineffective assistance. The Indiana Supreme Court reviewed this claim concluding as follows: "Baer has failed to show that trial counsel's knowledge of the law led to any confusion or mistaken understanding of a GBMI plea by the trial court" and that, in any event, Baer was not prejudiced because "[Judge Spencer] would not have acted

otherwise had trial counsel proceeded the way Baer says they should have." *Baer II*, 942 N.E.2d at 93. We find no basis on which to conclude that this conclusion was incorrect or unfounded.

*Penalty Phase Evidence*. Baer again claims that counsel failed to present mitigating evidence that would have created a more accurate, complete and ameliorated view of him. We have previously examined this claim and perceive no need for any additional analysis. It was properly resolved by the Indiana Supreme Court.

*Toxicologist Cross-Examination*. Baer next claims that his counsel conducted an inadequate investigation to properly and effectively cross-examine Dr. Evans, and that the Indiana Supreme Court's determination that Baer was not prejudiced thereby, because there was no difference between Dr. Evans's testimony at trial and during post-conviction proceedings, is based on an unreasonable determination of the facts and an unreasonable application of *Strickland*. The Indiana Supreme Court's opinion that trial counsel was not ineffective in these respects was explained as follows:

> Dr. Evans testified that there was no methamphetamine, amphetamine (methamphetamine's break-down product), or any other drug of abuse in the blood sample taken from Baer. (Trial Tr. at 1635.) He said that drugs in the blood would have broken down some in the thirteen months between when the blood was drawn and the testing. (Trial Tr. at 1639.) During cross-examination, Dr. Evans said that if Baer used 250 milligrams or more of methamphetamine within thirty-six hours of the blood draw, methamphetamine or amphetamine would have shown up in the blood analysis. (Trial Tr. at 1642–44.) He said that he did not know when Baer had last used methamphetamine and that if Baer had a small dose on the day of the crime he would not have been able to detect any methamphetamine or amphetamine in the blood sample. (Trial Tr. at 1643.) He did say Baer could not have taken a gram or more the day of the crime. The prosecution later used this testimony to argue that Baer was malingering about his drug abuse around the time the crime was committed. (Trial Tr. at 2070.)
>
> At post-conviction, Dr. Evans testified that the best approach is to have blood collected at or near the time of an incident and test it as soon as possible because drugs are chemicals which break down and blood is not the most conducive environment for preserving chemicals. (PCR Tr. at 490.) Ultimately, Dr. Evans could not say whether methamphetamine existed in Baer's blood at the time it was

collected, only that there was no such substance in his blood when it was tested. (PCR Tr. at 490.)

The upshot of all this is that Dr. [Evans's] testimony before the jury and his testimony at PCR were pretty consistent: if Baer had a very small amount of meth in his system on the day of the crime the tests might not have revealed it, but if he had an amount typical for users or abusers it would have. If anything, the extra effort by PCR counsel demonstrates that extra effort by trial counsel would have been fruitless.

*Baer II*, 942 N.E.2d at 95-96.

"In many instances cross-examination will be sufficient to expose defects in an expert's presentation. When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict. And while in some instances 'even an isolated error' can support an ineffective-assistance claim if it is 'sufficiently egregious and prejudicial,' *Murray v. Carrier*, 477 U.S. 478, 496 (1986), it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 131 S.Ct. at 791*; see also Miller v. Secretary, Department of Corrections*, 2009 WL 2436075, at *11 (M.D.Fla. Jul. 31, 2009). Here, the record reflects that Baer's counsel was active, engaged, and informed relative to Dr. Evans's toxicology determinations. The post-conviction record amply supports the Indiana Supreme Court's findings. Nothing in this analysis or decision suggests that it was "contrary to" clearly established federal law as determined by the Supreme Court of the United States nor was it an unreasonable interpretation of the facts. Similarly, this conclusion by the Indiana Supreme Court that Baer had failed to establish a deficient performance by counsel was not the product of an unreasonable application of *Strickland*; the Indiana Supreme Court clearly "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola*, 224 F.3d at 591. There is no basis for our acceptance of Baer's contentions in these respects.

*Objection to Dr. Masbaum's report.* Baer has procedurally defaulted on his claim that his trial counsel failed to object to the use of Dr. Masbaum's report thereby violating his Sixth Amendment right of confrontation under *Crawford v. Washington* and his Fifth Amendment right to be free from self-incrimination. Baer's submissions in this petition do not overcome the consequences of his procedural default.

*Properly instruct the jury.* We incorporate here our prior discussions of Baer's claim(s) of ineffective assistance in the context of the court's instructions to the jury. Further discussion is unnecessary here.

*Cumulative effect of ineffective assistance.* As a separate claim in his petition for a writ of habeas corpus, Baer argues that he was denied a fair trial both at the guilt and penalty phases, due to the cumulative effect of trial counsel's overall ineffectiveness, in violation of his constitutional rights. This catchall claim is repetitious of other portions of his petition, each of which we have fully discussed and resolved. These claims, whether considered individually or in the aggregate, do not warrant further review or different outcomes by us. *See Alvarez v. Boyd,* 225 F.3d at 825.

The Supreme Court's death penalty jurisprudence includes the recognition that "death is different," *Woodson v. North Carolina,* 428 U.S. 280, 303-304, (1976), and that this difference creates a unique "need for reliability on the determination that death is the appropriate punishment in a specific case." *Zant v. Stephens,* 462 U.S. 862, 884-85 (1983) (quoting *Woodson,* 428 U.S. at 303-04). "Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." *McFarland v. Scott,* 512 U.S. 849, 859 (1994). Having conducted the thorough review as required of a habeas court, our conclusion is firm: Baer has in the course of his trial and appeals received all the due process and protections the Constitution provides.

**E. Selection and Presentation of Issues on Direct Appeal**.

Baer's final claims center on his right to effective assistance of counsel from his appellate counsel, whose performance, he maintains, was deficient in various ways with respect to the prosecution of his direct appeal. The standard for judging a claim of ineffective assistance of counsel is consistent whether applied to trial or appellate lawyers. *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11th Cir. 1987). Where a defendant claims that counsel failed to raise the correct issues on appeal, the issue the court must resolve on habeas review is whether appellate counsel failed to raise a significant and obvious issue without it being based on a legitimate strategic purpose. *Franklin v. Gilmore,* 188 F.3d 877, 884 (7th Cir. 1999). Accordingly, we examine the "trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised are then compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996).

Baer has raised several specifications of appellate ineffective assistance in *Baer II* in the context of his selection and presentation of issues in his direct appeal, to wit: 1) not properly presenting prosecutorial misconduct claims; 2) not challenging the trial court's rejection of Baer's guilty but mentally ill plea; 3) not challenging the use of Dr. Masbaum's report; and 4) not challenging the jury instructions. We address each claim below:

*Presentation of prosecutorial misconduct claims*. We find no need to expand on our prior discussions in this context by revisiting this claim in the appellate context.

*Rejection of Baer's guilty but mentally ill plea*. Baer claims that appellate counsel did not challenge the trial court's rejection of the GBMI plea because counsel erroneously believed that

such a plea required a stipulation from the State, and that his failure to challenge Judge Spencer's rejection of the GBMI plea constituted deficient performance that greatly prejudiced Baer. The Indiana Supreme Court carefully and thoroughly reviewed this claim, along with the relevant statutes and the related facts, finding as follows:

> The instant contention largely rests on two statutes. Indiana Code § 35–36–1–1 considers a person mentally ill if he has "a psychiatric disorder which substantially disturbs [the] person's thinking, feeling, or behavior and impairs the person's ability to function." Indiana Code § 35–35–1–3 says, "The court shall not enter judgment upon a plea of guilty or guilty but mentally ill at the time of the crime unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea."

> Baer's argument assumes that once a factual basis for a mental illness exists, a trial court is *required* to accept a GBMI plea. (*See* Appellant's Br. at 35–36.) The statute does not require a court to accept a GBMI plea once there is any factual basis for it; instead, it prohibits a court from accepting a GBMI plea without one. Indeed, we have held that a defendant does not have an absolute right to a guilty plea and that a trial court may refuse to accept one in the exercise of sound judicial discretion. *Elsten v. State,* 698 N.E.2d 292, 295 (Ind.1998) (discretion not abused in rejecting a GBMI plea when two court-appointed physicians testified that the defendant was not mentally ill and a physician commissioned by the defendant disagreed).

> Dr. Davis's and Dr. Lawlor's conclusions were not so "uncontradicted" as Baer claims. (Appellant's Br. at 35–36.) Dr. Davis thought that Baer qualified as mentally ill based on his methamphetamine addiction. (Direct Appeal App. at 1419.) Although Dr. Lawlor agreed, he did not think that "his psychiatric illnesses 'grossly or demonstratively impair[ed] his perceptions.'" (Direct Appeal App. at 1581.) The trial court also had before it a report from Dr. Groff's examination of Baer after he committed an unrelated crime shortly before the murders. (Trial Tr. at 222–23.) Dr. Groff expressly raised the possibility that Baer was malingering. (Direct Appeal App. at 1557–58.)

> Based on this issue of fact, an appellate court would not have found that the trial court abused its discretion by rejecting Baer's GBMI plea and submitting the GBMI issue to the jury. We do think most appellate lawyers would have raised this contention, and they would have lost. There is not a reasonable probability that the outcome of Baer's appeal would have been different but for Maynard's failure to raise the issue. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

*Baer II*, at 103-04.

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Therefore, absent contrary evidence, "we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (quotation omitted). Here, the Indiana Supreme Court explained that even if Attorney Maynard had raised this claim on appeal, he would not have prevailed—that despite Baer's argument, the court-appointed mental health experts did not view Baer's mental illness as entitling him to the required judicial acceptance of his GBMI plea. Because we have no basis on which to conclude that the Indiana Supreme Court "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," Baer's claim of ineffective assistance of counsel on appeal does not survive and certainly does not support habeas corpus relief based on appellate counsel's failure to challenge the trial court's rejection of Baer's GBMI plea in *Baer I. Murrell v. Frank,* 332 F.3d at 1111 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

*Not challenging the use of Dr. Masbaum's report*. Baer next asserts that appellate counsel's failure to raise the claim that he was denied his right to confrontation through references to Dr. Masbaum's report during cross examination of the mental health experts, Dr. Davis and Dr. Lawlor, violated *Crawford v. Washington*, 541 U.S. 36 (2004). Specifically, Baer claims that the report was prepared following examination of Baer in an unrelated case and should not have been used during this trial in the manner described. *Crawford*'s prohibition applies to the admission of testimonial hearsay unless its use is predicated on a showing both as to the unavailability of the declarant to testify and that a prior opportunity by defendant to cross-examine the declarant had been afforded. In reviewing this claim, the Indiana Supreme Court reviewed the holding in *Crawford*, in the context of Baer's trial:

Giving Baer the benefit of the doubt as to the form of defense counsel's objections, a defendant has a right to be confronted with witnesses against him in a criminal prosecution. The Confrontation Clause of the Sixth Amendment effectively codified existing common law, which prevented a trial court from admitting testimonial hearsay statements unless the State showed both that the declarant was unavailable to testify and that the defendant had a prior opportunity to cross-examine the declarant. *Crawford,* 541 U.S. at 53–54, 124 S.Ct. 1354.

Although the U.S. Supreme Court did not comprehensively define the breadth of testimonial statements in *Crawford,* it did describe a core class of testimonial statements that included (1) *ex parte* in-court testimony such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for later use at a trial. *Id.* at 51–52, 124 S.Ct. 1354.

*Baer II,* 942 N.E.2d at 106. There followed a detailed analysis culminating in the Court's determination that Baer was not prejudiced because the use of the report was, at most, harmless error. *Id.* Specifically,

Dr. Lawlor had diagnosed Baer with a personality disorder but testified that he thought Baer could appreciate the wrongfulness of his actions at the time of the crimes. (Trial Tr. at 1864, 1871.) He recounted receiving reports about Baer having auditory hallucinations and ADHD as a child. (Trial Tr. at 1869–71.) Dr. Lawlor also gave a detailed account of the crimes as Baer described them to him, although he did not think that the voices Baer claimed to have heard during the murders constituted auditory hallucinations. (Trial Tr. at 1874–86.) In response to defense counsel's questioning, Dr. Lawlor stated that he did not think Baer was malingering, or faking, a mental illness. (Trial Tr. at 1893.)

When the State asked Dr. Lawlor about Baer's voices, Dr. Lawlor maintained that Baer's description did not indicate a split personality and that Baer did not mention anything about a voice called "Super Beast." (Trial Tr. at 1904–05.) Defense counsel quickly objected on grounds of relevance when the prosecutor asked Dr. Lawlor to review a report from Dr. Masbaum, but the trial court overruled the objection to the extent that the report was relevant to the issue of malingering. (Trial Tr. at 1905–07.) According to Dr. Masbaum's report, Baer once tried to present himself to Masbaum as having a split personality, telling Dr. Masbaum that he was talking to "Fred" on one day but talking to "Michael" on another. (Trial Tr. at 1907.) Dr. Lawlor conceded that Baer could have been malingering, to Dr. Masbaum if not to him, and that this information was inconsistent with his diagnosis because

"typically, the discrete personalities aren't aware of each other's existence." (Trial Tr. at 1908.)

Dr. Davis then testified that he considered Baer mentally ill to the level of having a mental disease or defect. (Trial Tr. at 1929.) According to Dr. Davis, Baer admitted committing the murders and described having auditory hallucinations, hearing voices, and having a raging, out-of-control part of himself that "came out" on the day of the murders. (Trial Tr. at 1922.) Baer had called this raging part of himself Super Beast. (Trial Tr. at 1923.) Dr. Davis also reviewed Baer's childhood experiences with depression, custody issues, hospitalization for suicide attempts, prescription drug use, and illicit drug abuse. (Trial Tr. at 1925–28.) Finally, he discussed the clinical link between drug abuse and psychosis, one that might materialize in some patients but not in others. (Trial Tr. at 1929–37, 1940–43.)

In response to the State's questioning, Dr. Davis stated his impression that the phrase "Super Beast" did not refer to a voice Baer heard but rather to the "raging part of him." (Trial Tr. at 1977.) After the prosecutor and Dr. Davis speculated over whether Super Beast originated from a tattoo on Baer's left forearm, the prosecutor asked Davis to read passages from Dr. Masbaum's report suggesting that Baer had heard voices since he was a child that appeared to come from a Winnie the Pooh doll. (Trial Tr. at 1978–80.) After the prosecutor asked Dr. Davis if Baer thought that voices telling him to kill his brother came from the Winnie the Pooh doll, trial counsel objected, "Mr. Puckett is having a pretty good time, but I can't cross-examine that report. . . . He's made fun of my client for claiming that he heard Winnie the Pooh when that's not what the report said, so I'm going to object to this. This is not funny." (Trial Tr. at 1979–80.)

\*\*\*

Regardless of whether the trial court should have admitted this evidence under *Crawford,* Maynard's decision not to present this issue on appeal did not prejudice Baer because admitting it for this limited purpose constituted harmless error. The jury heard evidence from two experts that Baer was mentally ill to the level required by Ind.Code § 35–36–1–1. (Trial Tr. at 1908–09, 1929, 1992–93.) It heard evidence that Baer suffered from ADHD and depression as a child, that he was hospitalized, that he used prescription drugs, and that he eventually started huffing and abusing illicit drugs. (Trial Tr. at 1925–28.) It heard evidence that chronic drug abuse could damage a person's mental abilities to the point of near-retardation and could exacerbate any preexisting mental illnesses. (Trial Tr. at 1929–37, 1940–43.) It is unlikely that a jury unconvinced by this evidence would have entered a GBMI verdict or recommended a sentence of life if only the State had not cross-examined Dr. Lawlor and Dr. Davis mentioning Dr. Masbaum's report.

*Baer II*, 942 N.E.2d at 105-06. This thorough review and analysis by the Indiana Supreme Court culminated in its reasonable conclusion that Baer was not prejudiced by references to Dr.

Masbaum's report. First, the Indiana Supreme Court noted that the use of the report was very limited. Second, the Indiana Supreme Court reasonably concluded that there was not a substantial likelihood that the substance of the report prejudiced Baer in light of other expert opinion determining that Baer was mentally ill, based on various biographical details of his life, such that as a child he had ADHD and depression for which he had been hospitalized, and that he had a history of illicit drug use that likely adversely effected his mental abilities and medical conditions. This analysis included a reasonable application of the controlling federal standard of review for a claim of ineffective assistance under *Strickland*, and also supported a reasonable finding of harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). The Indiana Supreme Court clearly understood and conscientiously applied the constitutional standard that produced a ruling that fell within the range of defensible conclusions. Accordingly, we find that Baer is not entitled to habeas corpus relief based on this claim. *Atkins v. Zenk*, 667 F.3d 939, 944 (7th Cir. 2012).

*Not challenging the jury instructions*. We need not dwell further on this claim beyond the thorough discussions given it in this opinion in other contexts.

## V.  Conclusion

Our methodical review of the issues raised by Petitioner Baer discloses no instance or aspect of the decisions of the Indiana Supreme Court in which the Court "appl[ied] a rule that contradicts the governing law . . . [or made] a decision that involve[d] a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Williams,* 529 U.S. at 405-06. We have examined the issue before us as to whether Baer has successfully demonstrated that the Indiana Supreme Court, despite identifying the correct rule of law, nonetheless unreasonably applied those principles to the facts of the case. In *Wiggins v. Smith*, 539 U.S. 510, 523 (2003), the Court explained its role in reviewing ineffective assistance of counsel claims in

these terms: to "conduct an objective review of [counsel=s] performance, measured for 'reasonableness under prevailing professional norms,'" *Strickland,* 466 U.S. at 688, which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.= *id.,* at 689@ (omitting parallel citations). Such a review has occurred here. Accordingly, we hold that: (1) AEDPA deference applies to each of the specifications of deficient performance by Baer's counsel raised here; (2) the "contrary to@ prong of ' 2254(d)(1) is not implicated in any fashion by the circumstances of this case; and (3) the Indiana Supreme Court=s decisions did not embody an "unreasonable application of@ clearly established federal law. Similarly, Baer has failed to establish by clear and convincing evidence that the factual findings by the Indiana courts were unreasonable.

By well established precedent, it is clear that "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus," *Holman v. Gilmore,* 126 F.3d 876, 8882 (7th Cir. 1997). No such error occurred here. Accordingly, no relief is available.

Apart from the deference owed to the Indiana Supreme Court under the AEDPA, Baer has failed to show that he was prejudiced by the performance of his trial or appellate counsel in any respect. *See Bieghler v. McBride,* 389 F.3d 701, 708 (7th Cir. 2004)(noting that capital habeas petitioner=s failure to "demonstrate that additional mitigating evidence would have made any difference, let alone that counsels' investigation into these matters fell below objective standards of professional conduct@ did not support claim of ineffective assistance of counsel) (citing *Conner v. McBride,* 375 F.3d 643, 662-63 (7th Cir. 2004)). His arguments fall decidedly short of supporting a grant of habeas relief on these claims as well.

Baer's conviction has withstood all levels of challenge in the Indiana courts. Thus, a presumption of constitutional regularity attaches to his conviction. *See Farmer v. Litscher,* 303

F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").[4]

"A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). Based on such established rules, Baer is not entitled to relief, and his petition for a writ of habeas corpus must be **denied.** Judgment consistent with this Entry shall now issue.

## VI. Certificate of Appealability

The petitioner is allowed **30 days** from the date of entry of Final Judgment in this cause to seek a certificate of appealability as to the issues he may specify. Be advised that this deadline does not extend the deadline for filing a notice of appeal.

**IT IS SO ORDERED.**

Date: ____12/18/2014_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Electronically Registered Counsel

---

[4] Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity'" that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 468 (1938)).